# UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| SOLVET SERVICES, LLC | CIVIL ACTION NO. _____ |
| VERSUS | JUDGE _____ |
| HD VENTURES, LLC; OFFICEMART, INC.; MCKINLEY INVESTMENT, LLC; MCKINLEY CORPORATION, LTD.; HITCHED, INC.; JARROD HOLMAN; JASON D. ANGEL; HALEN BACH, and CHRISTOPHER WALKER | MAGISTRATE _____ |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

## <u>COMPLAINT</u>

Solvet Services, LLC, for its complaint against HD Ventures, LLC; OfficeMart, Inc., McKinley Investment, LLC, McKinley Corporation, Ltd., and Hitched, Inc., avers as follows:

1. Plaintiff, Solvet Services, LLC, ("Solvet"), is a Louisiana limited liability company with its principal place of business in Lafayette, Louisiana.

2. Defendants herein are:

   a) HD Ventures, LLC, ("HD Ventures") a Texas limited liability company with its principal place of business in Dallas, Texas;

   b) OfficeMart, Inc., ("OfficeMart") a North Carolina corporation with its principal place of business in Garner, North Carolina;

   c) McKinley Investment, LLC, is a Wyoming limited liability company with its principal place of business in Beverly Hills, California.

   d) McKinley Corporation, Ltd., a foreign company with its principal place of business in Central Hong Kong, S.A.R.;

1

e)  Hitched, Inc., a Delaware corporation with its principal place business in Houston, Texas;

f)  Jarrod Holman, is a natural person of the full age of majority, resident of and domiciled in the State of Texas;

g)  Jason D. Angel, is a natural person of the full age of majority, resident of and domiciled in the State of North Carolina;

h)  Halen Bach, is a natural person of the full age of majority and upon information and belief is resident of and domiciled in the State of California; and

i)  Christopher Walker, is a natural person of the full age of majority and upon information and belief is resident of and domiciled in the State of Utah.

3.  Complete diversity of citizenship exists between the Plaintiff and Defendants and the amount of controversy exceeds $75,000, exclusive of interests and costs.  Accordingly, this Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § 1332.

4.  In addition to diversity jurisdiction as set forth above, this Court also has jurisdiction over this action pursuant to 18 U.S.C. § 1964(c) and 28 U.S.C. § 1331 based upon the civil RICO claims brought herein, which arise under the laws of the United States.

5.  This Court has supplemental jurisdiction over the non-federal claims asserted herein under 28 U.S.C. § 1367, as the non-federal claims are reasonably related to the federal claims and arise out of the same transactions and occurrences.

6.  This Court has jurisdiction over each Defendant named herein because (1) the Defendant either on their own or through its agents, at the time of the commission of the acts alleged hereunder, transacted business in the State of Louisiana, and the cause of action that is the object of this Complaint arises out of business transactions in the State of Louisiana,

including specific acts within this district, including but not limited to the abuse of money that was held in this district, or (2)  the Defendant has sufficient minimum contacts with this district so as to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.   Venue is proper in this Court because a substantial portion of the transactions and damages sustained were committed and/or occurred in this district; Defendants have received substantial compensation and improper benefits in this district by doing business here and engaging in numerous activities that had (and continue to have) an effect in this district, or under 18 U.S.C. § 1965(c) the ends of justice require that other parties residing in any other district be brought before the Court.

## TRANSACTION AND OCCURANCE OF EVENTS

8.   Solvet was defrauded by the Defendants of almost One Million Dollars.

9.   On April 28, 2020, Solvet was awarded a Two Million, Five Hundred and Seventy-Two Thousand and Two Hundred Dollar ($2,572,200.00) contract with the Federal Bureau of Prisons, U.S. Department of Justice ("DOJ") to deliver 180,000 boxes of blue nitrile power-free disposable gloves in response to the global COVID-19 pandemic (the "DOJ Contract").  The gloves were to be delivered to six separate regions covering the whole of the United States on or before May 12, 2020.

10. Solvet is a Service Disabled Veteran Owned Small Business and the Defendants' fraudulent activities caused Solvet to lose the DOJ Contract costing Solvet lost profits, lost opportunity and other damages as will be shown in Court.

**The RICO Scheme**

11.  On April 28, 2020, Solvet contracted with Hitched and issued a purchase order to purchase the gloves from Hitched in an attempt to fulfill the DOJ Contract.

12. The CRO of Hitched, Christopher Walker, falsely and fraudulently represented to Solvet in telephone calls, e-mail correspondence, and text messages that Hitched procured the gloves and they would be delivered by May 12, 2020 in conformance with the DOJ Contract.

13. These false representations were made on almost a daily basis.  Hitched never informed Solvet that there was a problem procuring the gloves, that the gloves would not arrive on time, or that the transaction as originally represented would not occur.

14. However, on May 14, 2020, two days after the gloves were required to be delivered, Hitched admitted that it was unable to procure the gloves.

15.  Thereafter, Hitched passed Solvet off to another broker, HD Ventures.  Hitched vouched for HD Ventures, representing that HD Ventures would be able to quickly procure the gloves and guaranteed that HD Ventures was a respectable and quality company. In reality, HD Ventures came into existence in April 2020- only one month prior to its contract with Solvet.

16. On May 15, 2020, Solvet contracted with HD Ventures and issued a purchase order for the purchase of 180,000 boxes of gloves at $12.00 a box to be delivered as quickly as possible.

17. All parties agreed and acknowledged that HD Ventures would source the gloves from OfficeMart and OfficeMart would fulfill the purchase order by May 22, 2020.  To further this contract, Solvet, HD Ventures, and OfficeMart executed an escrow agreement.  Solvet

wired the escrow agent Two Million, One Hundred and Sixty Thousand Dollars ($2,160,000.00).

18. On May 18, 2020, Eight Hundred, Seventy-Five Thousand and Two Hundred and Fifty Dollars ($875,250.00) from escrow was wired to OfficeMart as an advance deposit for the manufacturing and the delivery of the gloves.

19. Thereafter, upon information and belief, OfficeMart contracted with McKinley Corporation, Ltd. through its chairman Halen Bach, to manufacture all 180,000 boxes of gloves.

20. Solvet never communicated with McKinley Corporation, Ltd. or any person associated with McKinley Corporation, Ltd. Solvet was wholly reliant upon information from HD Ventures and OfficeMart concerning the contract with McKinley Corporation, Ltd.

21. McKinley Corporation, Ltd. is a subsidiary of McKinley Investment LLC according to the McKinley Investment website (collectively referred to herein as "McKinley"). Upon information and belief, McKinley Corporation, Ltd. is directly controlled by McKinley Investment LLC's and its founder, Halen Bach. The related entities are deeply intertwined and comprise a single business enterprise such that McKinley Corporation, Ltd. is an alter ego of McKinley Investment LLC. Therefore, McKinley Investment LLC is liable for the actions, obligations, and misdeeds of McKinley Corporation, Ltd.

22. Following the wire transfer to OfficeMart, Solvet discussed the pending transaction with Jason Angel, the CEO of OfficeMart, almost every day and often multiple times a day. Angel affirmatively represented that the transaction was complete and the gloves had been procured and would be delivered directly to the DOJ no later than May 22, 2020. Solvet subsequently relayed this information to the DOJ.

23. Angel continued to make promise after promise over the telephone, in e-mail correspondence, and by text message related to the delivery the gloves.  In all of these conversations, OfficeMart and HD Ventures represented that various activities were underway by and between OfficeMart and McKinley.  During this time, OfficeMart and HD Ventures never indicated that the advance deposit was at risk or that the transaction as originally represented would not occur.

24. On May 22, 2020, the gloves did not arrive as promised. However, Angel continued to represent the delivery of the gloves was imminent.   Among other representations, on May 27, 2020, Angel sent an email to both Solvet and the U.S. government contracting officer, Lashundra Thomas, stating the gloves would be ship two days later and would be delivered to five out of the six required DOJ locations by June 3, 2020.

25. On June 1, 2020, OfficeMart once again changed the delivery date and claimed it would ship the gloves the next evening.

26. On or about June 4, 2020, Angel advised Lashundra Thomas that OfficeMart could deliver a small order immediately and fulfill the remainder of the order in two to three weeks' time.

27. Jarrod Holman, the principal owner of HD Ventures, continued to represented to Solvet in telephone calls, e-mail correspondence, and text messages that HD Ventures procured the gloves and they would be delivered in conformance with the contract with Solvet.

28. All of the foregoing statements by HD Ventures, Hitched, OfficeMart and McKinley were false and/or misleading when made.

29. HD Ventures and OfficeMart never supplied or delivered any of the gloves to Solvet or the DOJ.

30. On June 23, 2020, the DOJ terminated Solvet's contract for failure to deliver the gloves within the time frame necessary to meet the DOJ's needs related to the COVID-19 epidemic.

**Defendants' Failure to Return the Money**

31. After weeks of empty promises, Solvet began pressuring HD Ventures and OfficeMart to provide proof that the gloves were ordered and the date of delivery.  Despite repeated requests by Solvet, tracking numbers, bills of lading, or other documentation evidencing that the gloves were shipped was never provided to Solvet by the Defendants.

32. By mid-June, it became clear that HD Ventures and OfficeMart were not able to procure the gloves as promised and Solvet terminated the contract and demanded a return of the Two Million, One Hundred and Sixty Thousand Dollars ($2,160,000.00) previously wired to the escrow agent.

33. On June 12, 2020, the escrow agent released One Million Two Hundred Eighty-Four Thousand, Seven Hundred and Fifty Dollars ($1,284,750.00) back to Solvet after confirmation that OfficeMart and HD Ventures failed to supply the gloves according to the contract and escrow agreement.

34. On June 16, 2020, Solvet made demand on OfficeMart and HD Ventures for the immediate return of the advanced deposit.

35. Despite demand and its acknowledged failure to perform the contract and deliver any gloves, OfficeMart and HD Ventures have failed to return the remaining Eight Hundred, Seventy-Five Thousand and Two Hundred and Fifty Dollars ($875,250.00) which was paid to OfficeMart.

36. OfficeMart claimed it no longer had the deposit in its possession and was unable to return the funds to Solvet.  Specifically, OfficeMart claimed that the advanced deposit had already been paid to its supplier, McKinley.

37. To date, OfficeMart has never supplied Solvet with proof of these claims.   Instead, OfficeMart provided Solvet with vague "demand letters" OfficeMart asserts were sent to McKinley.  The "demand letters" from OfficeMart do not refer to Solvet by name and appear refer to multiple demands that do not match the amount of the advanced deposit.

38. OfficeMart also provided Solvet with an alleged response from Chairman Halen Bach of McKinley.   In this response, McKinley states it would be willing to return a portion of the money paid for the gloves.  McKinley states that an undisclosed portion of the gloves would be available for shipment on July 6, 2020 and implied it would keep the fee associated with those gloves. Nowhere in the letter does it refer to Solvet or the advanced deposit.

## Summary of Claims

39. Solvet alleges claims under the Racketeer Influenced and Corrupt Organizations (RICO) Act, as well as under state law for fraud, conspiracy, breach of contract and state RICO claims.

40. Plaintiff seeks the return of Eight Hundred, Seventy-Five Thousand and Two Hundred and Fifty Dollars ($875,250.00) taken by the Defendants, with other co-conspirators, plus compensation for all other damages sustained, including lost profits, lost opportunity, and without limitation all fees and costs it has incurred or will incur as a result of the Defendants' actions, all of which damages must be trebled under RICO. Plaintiff also seeks all attorneys' fees and costs incurred in this matter under RICO.

41. Solvet seeks a judgment against each Defendant jointly, and *in solido*, for all damages sustained.

## COUNT I: CIVIL RICO CLAIM AGAINST ALL DEFENDANTS

42. The foregoing allegations are incorporated in this Count.

43. The Defendants, individually and in conspiracy with one another, violated RICO by engaging in (1) "racketeering activity", (2) conducted through a "pattern", (3) affecting an "enterprise", (4) impacting interstate commerce.

44. At all relevant times, the Plaintiff and Defendants were "persons" for purposes of 18 U.S.C. § 1961(3) and 1964(c).

45. The enterprise at issue in this case, for purposes of 18 U.S.C. § 1962, is an association-in-fact of all unnamed co-conspirators and Defendants collectively referred to herein as "the Enterprise."   Under 18 U.S.C. § 1961(4) an enterprise need not be a specific legal entity but rather maybe "any union or group of individuals associated in fact although not a legal entity."   While Defendants participated in the Enterprise and were a part of it, Defendants also have an existence separate and distinct from the Enterprise.

46. The Enterprise engaged in activities which affect interstate commerce, including the solicitation and receipt of interstate financial transactions, which are transacted via wire transfer (mail or wire fraud).   The Enterprise falsely and fraudulently represented purported facts to Solvet to induce it to contract with HD Ventures and OfficeMart for the manufacture and delivery of gloves and to pay an advance deposit prior to receipt of the gloves.   The Enterprise falsely and fraudulently concealed the true facts of the scheme and continued to conceal from Solvet the true facts of the transaction after the advance deposit was made.

9

47. The Defendants were engaged in a conspiracy to defraud the Plaintiff and each of them are liable for the actions of the other as if they themselves had committed the acts. The conspiracy engaged in by these Defendants utilizing mail fraud, (18 U.S.C. §1341),  wire fraud (18 U.S.C. §1343) and defrauding the U.S. (18 U.S.C. § 371) occurred by use of interstate emails, telephone or fax and by use of the wire transfer system of the Federal Reserve Bank of the United States.

48. Solvet has been injured in its business and property as a direct and proximate result of the foregoing violations of 18 U.S.C. § 1962(b) and 1962(d) and asserts this civil RICO claim pursuant to 18 U.S.C. § 1964 (c).

49. As a result of the fraudulent acts, breaches of contract and RICO violations committed by the Defendants, the Defendants are liable *in solido* to Solvet in the amount of approximately Eight Hundred, Seventy-Five Thousand and Two Hundred and Fifty Dollars ($875,250.00), lost profits, lost opportunities, and other damages, plus judicial interest from date of demand and all costs. Furthermore, pursuant to 18 U.S.C. § 1964 (c), Solvet is entitled to recover threefold damages and the cost of the suit, including reasonable attorney's fees.

## COUNT II: VIOLATION OF LOUISIANA RACKETEERING ACT AGAINST ALL DEFENDANTS

50. The foregoing allegations are incorporated in this Count.

51. Defendants have engaged in a pattern of conduct undertaken for the purpose of inducing Solvet and other persons, by means of untrue oral or written statements and/or other artifices and deceptions, to provide funds for the manufacturing and delivery of gloves.

52. For the reasons set forth hereinabove, Defendants have violated Louisiana Racketeering Act, La. Rev. Stat. § 15:1351, *et seq.* (the "LRA").

10

53. Defendants have engaged in the foregoing course of conduct in violation of La. Rev. Stat. § 15:1353 in order to perpetuate and conceal their own past and ongoing misconduct, including the diversion of Eight Hundred, Seventy-Five Thousand and Two Hundred and Fifty Dollars ($875,250.00) of Solvet for the benefit of themselves and others, as well as similar acts of self-dealings at the expense of Solvet in violation of Louisiana law.

54. Through the aforesaid conduct, Defendants knowingly received proceeds derived, directly or indirectly, through a pattern of conduct constituting and/or involving violations of the LRA.

55. Plaintiff and Defendants are "persons" within the meaning of the LRA.

56.  All of the foregoing acts separately constitute violations of La. Rev. Stat. § 14:67, and Defendants' conduct in engaging in multiple instances of racketeering activity pursuant to La. Rev. Stat. § 15:1352 in violation of La. Rev. Stat. § 15:1353.

57. Solvet has been injured as a result of the aforesaid conduct of Defendants by, among other things, the loss of profit, income and revenues to which Solvet was entitled; the loss of the use and benefit of funds expended to purchase the gloves, the loss of good will, and future revenues and profits, business relationships and opportunities, and other damages, losses, and injuries, (including attorney's fees and court costs) of such nature and in such amounts as shall be demonstrated at trial.

58. Pursuant to La. Rev. Statute § 15:1356(E), Plaintiff is entitled to recover three times the actual damages sustained as a result of the conduct of Defendants, together with their attorneys' fees and expenses incurred in the investigation and prosecution of these claims.

### COUNT III: CIVIL CONSPIRACY AGAINST ALL DEFENDANTS

59. The foregoing allegations are incorporated in this Count.

60. The Defendants, acting in concert with one another committed the intentional tort of fraud. Solvet shows that the defendants made hundreds of misrepresentations of material fact with the specific intent to deceive Solvet.

61. Each Defendant is liable *in solido* for all damages caused by said act pursuant to La. Civ. Code art. 2324(a) because the Defendants conspired with one another to commit the intentional and willful fraud set forth above.

## COUNT IV: BREACH OF CONTRACT AGAINST HD VENTURES AND OFFICEMART

62. The foregoing allegations are incorporated in this Count.

63. HD Ventures and OfficeMart entered into an agreement with Solvet for the manufacturing and delivery of gloves.

64. As more particularly described above, HD Ventures and OfficeMart were obligated to deliver 180,000 boxes of gloves by May 22, 2020.

65. HD Ventures and OfficeMart failed to deliver any of the gloves, in breach of its contract with Solvet.

66. As a result of this breach of contract by HD Ventures and OfficeMart, Solvet suffered damages for which, including but not limited to: the loss of the advance deposit, loss of revenue and profits, loss of opportunity, and attorneys' fees and costs incurred in connection with this litigation.

## COUNT V: BAD FAITH BREACH OF CONTRACT AGAINST HD VENTURES AND OFFICEMART

67. The foregoing allegations are incorporated in this Count.

68. Every contract contains an implied covenant of good faith and fair dealing, and Louisiana law requires that "contracts must be performed in good faith." La. Civ. Code art. 1983.

69. HD Venture and OfficeMart purposefully and willfully breached its express and implied contractual obligations to Solvet by failing to deliver what they had promised to Solvet. Specifically, HD Venture and OfficeMart participated in the Enterprise to defraud Solvet.

70. By accepting Solvet's purchase order under false pretenses and with no intention of performing, HD Venture and OfficeMart's breach of its contract with Solvet was, and remains, in bad faith, with malice and intent within the meaning of La. Civ. Code art. 1997.

71. Solvet is entitled to damages caused as a result of HD Venture and Office Mart's bad faith breach of contract including and all related costs and expenses, including attorney fees, as well as all other actual and consequential damages, whether or not foreseeable, to be proven at the trial of this matter.

## COUNT VI: FRAUD IN THE INDUCEMENT OF CONTRACT AGAINST HD VENTURES AND OFFICEMART

72. The foregoing allegations are incorporated in this Count.

73. HD Ventures, Jarrod Holman, OfficeMart and Jason Angel represented to Solvet that they could supply and deliver the object of the contract, gloves, on or before the required deadline. These representations were false and HD Ventures and OfficeMart knew that they were false at the time that they made them. Solvet has not received the gloves.

74. HD Ventures, Jarrod Holman, OfficeMart and Jason Angel intentionally misrepresented and suppressed the truth in order to induce Solvet to place money in the escrow account and approve release of the advance deposit.

75. Had Solvet known that HD Ventures and OfficeMart would not manufacture or deliver the gloves as promised by HD Ventures and OfficeMart - Plaintiff would not have contracted with HD Ventures and OfficeMart in the first place and would not have paid the advanced deposit.

76. Solvet is entitled to a rescission of its respective contract, the full return of its money plus legal interest from the dates of the payment of the advanced deposit, and damages and attorneys' fees pursuant to La. Civ. Code art. 1958.

### COUNT VII: BREACH OF CONTRACT AGAINST HITCHED

77. The foregoing allegations are incorporated in this Count.

78. Hitched entered into an agreement with Solvet for the manufacturing and delivery of gloves.

79. As more particularly described above, Hitched was obligated to deliver 180,000 boxes of gloves by May 12, 2020.

80. Hitched failed to deliver any of the gloves, in breach of its contract with Solvet.

81. Solvet is entitled to recover damages due to Hitched's breach of contract and failure to deliver the gloves.

### COUNT VIII: BAD FAITH BREACH OF CONTRACT AGAINST HITCHED

82. The foregoing allegations are incorporated in this Count.

83. Hitched purposefully and willfully breached its express and implied contractual obligations to Solvet by failing to deliver what it promised to Solvet. Specifically, Hitched participated in the Enterprise to defraud Solvet.

84. By accepting Solvet's purchase order under false pretenses and with no intention of performing, Hitched's breach of its contract with Solvet was, and remains, in bad faith, with malice and intent within the meaning of La. Civ. Code art. 1997.

85. Solvet is entitled to damages caused as a result of Hitched's bad faith breach of contract including and all related costs and expenses, including attorney fees, as well as all other actual and consequential damages, whether or not foreseeable, to be proven at the trial of

this matter.

## **DEMAND FOR JURY TRIAL**

86. Plaintiff demands trial by jury of all issues so triable.

WHEREFORE, after due proceedings herein, Solvet Services, LLC that this, its Complaint in the captioned matter, be deemed good and sufficient, and upon due proceedings, that judgment be had and rendered hereupon in favor of Plaintiff and against HD Ventures, LLC, OfficeMart, Inc., McKinley Corporation, Ltd., McKinley Investment LLC, and Hitched, Inc. jointly, and *in solido*, as follows:

1. Returning the full sum of $875,250.00 and funds, with interest, until paid in full for breach of contract;

2. Awarding Plaintiff the monetary damages caused by the Defendants as shown at trial, including trebled actual damages, as authorized by law, lost profits, and lost opportunity;

3. Awarding Plaintiff its attorneys' fees, costs, and expenses incurred in the pursuit and prosecution of this action;

4. Awarding Plaintiff all pre and post judgment judicial interest from the date of May 18, 2020, on all sums and amounts awarded herein; and

5. Awarding Plaintiff all other relief to which Plaintiff are entitled at law or equity on the premises hereof.

- Signature on following page -

RESPECTFULLY SUBMITTED BY:

/s/ John B. Dunlap III
John B. Dunlap III (La Bar No. 19431)
Jennifer A. Fiore (La Bar No. 28038)
Hunter R. Bertrand (La Bar No. 30181)
Alexis M. Breedlove (La Bar No. 30649)
**DUNLAP FIORE, LLC**
6700 Jefferson Highway, Building 2
Baton Rouge, LA 70806
Telephone: (225) 282-0660
Facsimile: (225) 282-0680
*Attorneys for Solvet Services, LLC*

**PLEASE ISSUE SUMMONS TO:**

**HD Ventures, LLC**
c/o Jarrod Holman, Registered Agent
9902 Lakemont Drive
Dallas, TX 75220

**OfficeMart, Inc.**
c/o Jason Angel, Registered Agent
649 Poole Drive
Garner, NC 27529

**McKinley Investment, LLC**
c/o United States Corporation Agents, Inc., Registered Agent
1623 Central Ave, Ste 18
Cheyenne, WY 82001

**McKinley Corporation, Ltd.**
29 On Chun St. Suite # 1253
Ma On Shan
Shatin, Hong Kong S.A.R.

**Hitched, Inc.**
c/o C T Corporation System, Registered Agent
1999 Bryan Street, Suite 900
Dallas, TX 75201

**Jarrod Holman**
9902 Lakemont Drive
Dallas, TX 75220

16

**Jason D. Angel**
1016 Shannon Court
Raleigh, NC 27603

**Halen Bach**
433 North Camden Drive, Suite 601
Beverly Hills, CA 90210

**Christopher Walker**
11595 S Hickory Valley Dr.
Sandy, UT 84092